UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09-cr-139

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SIDNEY STANTON HANSON, | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the Court upon Isabel Deal's Rule 60(b) Motion for Relief from Judgment, (Doc. No. 42), the government's response (Doc. No. 50), and other pleadings, laden with a wide range of facts and arguments. However, the narrow question before the Court is whether Isabel Deal reasonably appeared to be a potential claimant with standing to contest the forfeiture of real property she formerly owned, such that the government was obligated to send her notice of the forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2(b)(6)(A).

I.  BACKGROUND

Sidney Hanson was the founder and manager of Queen Shoals, LLC, and other entities, including Two Oaks Funds, LLC, and Select Fund, LLC. (Doc. No. 1: Information at ¶ 1). Hanson and others, including Ken Deal, solicited investors who were promised high interest rates and the return of their principal through "Private Loan Agreements." (Id. at ¶ 10; Doc. No. 50: Response at Exhibit 1). Ultimately, Hanson was found to be operating a Ponzi scheme which took in over $30 million from hundreds of victims. (Doc. No. 50: Response at Exhibit 1).

On May 14, 2009, one such victim, Isabel Deal, the mother of Ken Deal, entered an agreement to sell her real property at 130 Lindsay Farm Road, Stoney Point, Iredell County, North Carolina, to Two Oaks Fund for $600,000. (Doc. No. 43: Memorandum at Exhibit 2). In

the same agreement, Deal agreed to loan $500,000 to Queen Shoals Group at the closing of the real estate transaction. On May 24, 2009, the parties executed a Private Loan Agreement in which Select Fund agreed to pay Deal 14% interest annually and return her $500,000 at the end of five years. (Id. at Exhibit 8). The security interest detailed in the agreement was a precious metals inventory securing 15% of the loan principal. Deal expected the principal to be held in trust for nine family members and then be donated to Gideons International after they died. (Doc. No. 43: Memorandum at Exhibits 2 and 6).

The real estate transaction closed on May 26, 2009, at which Deal received $600,000 in the form of two checks from Two Oaks Fund and executed a general warranty deed to Two Oaks Fund, without reserving any interest in the real property. (Id. at Exhibits 3, 6; Doc. No. 50 Response at Exhibit 8: Lien Report). On the same date, Deal directed her closing attorney to wire $596,000 to Select Fund. (Doc. No. 43: Memorandum at Exhibit 4).

On July 28, 2009, the Government filed a Bill of Information charging Hanson with securities fraud, mail fraud, and money laundering. (Doc. No. 1). The Bill of Information contained a Notice that the government would seek forfeiture of the defendant's property involved in, and that was proceeds of, the violations. On January 7, 2010, Ken Deal sent a facsimile transmission to the United States Attorney's Office (USAO) handling the forfeiture which included the deed, a tax record, and a cover page reading:

> Inf. on family farm sold to Two Oaks Fund, LLC (Queen Shoals). Was the $596,000 wired after the cease and desist? We were told this amount would be returned!

(Doc. No. 50: Response at Exhibit 7). On February 15, 2010, Isabel Deal provided a Victim Impact Statement to the USAO with a copy of the Private Loan Agreement which read:

> Loaning Queen Shoals $500,000 and not knowing how much I might get back

2

> plus not having my family farm is very hard on a 87 year old! I'm attaching the $500,000 loan agreement. The 500,0000 was to go to the Gideons (for Bibles) after we died.

(Doc. No. 43: Memorandum at Exhibit 6).

On May 25, 2010, this Court issued a Preliminary Forfeiture Order after Hanson pled guilty, which included the real property at 130 Lindsey Farm Road. (Doc. No. 19). On September 7, 2010, the government filed a declaration that it had complied with 21 U.S.C. § 853(n)(1) by posting a notice of forfeiture on an official government internet site for at least 30 consecutive days. (Doc. No. 30). The Court sentenced Hanson on March 31, 2011, and, in the absence of any claims to the property, ordered final forfeiture in accordance with the Preliminary Forfeiture Order. (Doc. No. 40: Judgment at 5).

On May 17, 2011, Deal filed the instant motion for relief from that final Judgment claiming that she did not receive required notice of the criminal forfeiture action. (Doc. No. 42).

II.  DISCUSSION

Federal Rule of Civil Procedure 60(b) has been recognized as a way to reopen ancillary forfeiture proceedings. United States v. Puig, 419 F.3d 700, 702 (8th Cir. 2005). Under that rule, a party may be relieved from a final judgment if she shows excusable neglect or other reason. Here, Deal argues that she should be excused from her failure to file a claim within the thirty-day period because the government did not send her direct notice of the forfeiture action. The government contends that direct notice was not required because Deal did not reasonably appear to be a potential claimant.

Federal Rule of Criminal Procedure 32.2(b)(6)(A) provides:

> If the court orders the forfeiture of specific property, the government must publish

> notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture.

Here, the specific property at issue is the real property at 130 Lindsey Farm Road. Deal asserts the government was aware that she was a potential claimant of that property, pursuant to 18 U.S.C. § 853(n). (Doc. No. 43: Memorandum at 9). However, direct notice under § 853 is not required for those who merely "allege an interest in the property," Puig, 419 F.3d at 703, but is required for those who reasonably appear to the government to be potential claimants with standing to contest the forfeiture, Fed. R. Crim P. 32.2(b)(6)(A).

To assess whether the government should have reasonably viewed Deal as a potential claimant with standing, it is necessary to consider the theory by which Deal now asserts an interest in 130 Lindsey Farm Road. She claims that when Hanson duped her into selling her farm, a constructive trust was created for her benefit to prevent his unjust enrichment. (Doc. No. 43: Memorandum at 12). She points to communication with the USAO as alerting the government to the family's desire to get the farm back. (Id. at 9-10). However, as detailed above, Ken Deal's facsimile transmission only referenced receiving back the $596,000 wired to Hanson and the documents he submitted showed that Isabel Deal held no continuing legal interest in the real property. (Doc. No. 50: Response at Exhibit 7). Similarly, Isabel Deal's Victim Impact Statement only referenced the $500,000 loaned to Queen Shoals, not the real property itself. (Doc. No. 43: Memorandum at Exhibit 6). After providing that statement in February 2010, Deal did not record any notice with the register of deeds asserting an interest in the property.

The Fourth Circuit has held that a person who formerly owned a property, but no longer retains an interest in it, is not entitled to direct notice and lacks standing to assert a claim.

United States v. Phillips, 185 F.3d 183, 187 (4th Cir. 1999). However, a constructive trust is a legal interest defined by state law which can be protected under § 853. United States v. Andrews, 530 F.3d 1232, 1238 (10th Cir. 2008). In North Carolina, and elsewhere, constructive trusts protect specific property. Roper v. Edwards, 373 S.E.2d 423, 424-425 (N.C. 1988). They have been found not to protect proceeds unwittingly invested with fraudsters. United States v. Mazza-Alaluf, 2011 WL 308266, slip op. at 4-5 (S.D.N.Y. Jan. 27, 2011); United States v. Rothstein, 2010 WL 2943315, slip op. at 4 (S.D. Fla. July 26, 2010); United States v. Ramunno, 2009 WL 363910, slip op. at 2 (N.D. Ga. Jan. 13, 2009). This is because unsecured creditors do not have superior interests in specific property of debtors. United States v. Corpus, 491 F.3d 205, 211 (5th Cir. 2007); United States v. Reckmeyer, 836 F.2d 200, 206 (4th Cir. 1987). Additionally, courts have refused to apply the doctrine of constructive trust to multi-victim frauds because it would unfairly favor some victims over others similarly situated. Andrews, 530 F.3d at 1238-39 (collecting cases).

Based on the facts and circumstances of this case, the Court finds that Isabel Deal was not entitled to direct notice of the forfeiture action because she did not reasonably appear to be a potential claimant with standing to contest the forfeiture of 130 Lindsey Farm Road. Records relating to the property did not show that she retained a continuing interest in it. Even after she was aware of Hanson's fraud, she took no steps to record a notice asserting an interest in the property. In their communications with the government, Deal and her son expressed desire for the return of the money loaned to Hanson, not the farm. Thus, Deal reasonably appeared to be like the hundreds of other victims in this case who tragically provided large amounts of cash to Hanson as unsecured loans. As such, she would naturally appear to have an interest in restitution, but not an interest in a particular forfeited asset as the beneficiary of a constructive

5

trust. Thus, the government was not required to send her direct notice and she has not established excusable neglect or other reason for relief from the final Judgment.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Petitioner's Rule 60(b) Motion for Relief from Judgment, (Doc. No. 42), is **DENIED**.

Signed: October 16, 2012

Robert J. Conrad, Jr.
Chief United States District Judge